**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| PARUS HOLDINGS INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 6:19-cv-00432-ADA |
| | § | JURY TRIAL DEMANDED |
| APPLE INC. | § | |
| | § | |
| Defendant. | § | **[LEAD CASE]** |
| | § | |
| | § | |

| | | |
|---|---|---|
| PARUS HOLDINGS INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 6:19-cv-00433-ADA |
| | § | JURY TRIAL DEMANDED |
| GOOGLE LLC | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**DEFENDANT GOOGLE LLC'S OPPOSED MOTION TO TRANSFER VENUE TO THE
NORTHERN DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

**Page**

I.      FACTUAL BACKGROUND ................................................................................... 1

     A.      Google Assistant Documents And Witnesses Are Located In NDCA .................. 1

     B.      Relevant Parus Witnesses And Evidence Are Located In NDCA ........................ 2

     C.      Third-Party Witnesses And Evidence Are Located In NDCA ............................. 2

II.     LEGAL STANDARD ........................................................................................... 3

III.    NDCA IS A CLEARLY MORE CONVENIENT FORUM THAN WDTX .................... 4

     A.      This Case Could Have Been Filed In NDCA ........................................... 4

     B.      All Private Interest Factors Heavily Favor Transfer To NDCA ........................... 5

         1.      Cost Of Attendance For Willing Witnesses ............................................... 5

         2.      Relative Ease Of Access To Sources Of Proof ......................................... 7

         3.      Availability Of Compulsory Process ........................................................ 8

         4.      Practical Problems For An Easy, Expeditious, And Inexpensive
              Case ....................................................................................................... 8

     C.      The Public Interest Factors Weigh In Favor Of Transfer ................................... 10

IV.     CONCLUSION .................................................................................................. 10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*DataQuill, Ltd. v. Apple Inc.*,
2014 WL 2722201 (W.D. Tex. June 13, 2014)...........................................................4

*Datascape, Ltd. v. Dell Techs., Inc.*,
2019 WL 4254069 (W.D. Tex. June 7, 2019) ...........................................................8

*Fintiv Inc. v. Apple Inc.*,
2019 WL 4743678 (W.D. Tex. Sept. 13, 2019), *aff'd sub nom. In re Apple
Inc.*, No. 2020-104 (Fed. Cir. Dec. 20, 2019)...................................................7, 10

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010).............................................................................6, 9

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009).....................................................................5, 7, 10

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009)...............................................................................4

*In re Volkswagen of Am. Inc.*,
545 F.3d 304 (5th Cir. 2008) .........................................................................3, 4, 6

*Parus v. Amazon*,
No. 6:19-cv-454 ........................................................................................................9

*Parus v. Apple*,
No. 6:19-cv-432 ........................................................................................................9

*Parus v. LG*,
No. 6:19-cv-437 ........................................................................................................9

*Parus v. Samsung*,
No. 6:19-cv-438 ........................................................................................................9

*Polaris Innovations Ltd. v. Dell, Inc.*,
2016 WL 7077069 (W.D. Tex. Dec. 5, 2016) .........................................................7

*VLSI Tech., LLC v. Intel Corp.*,
No. 6:19-cv-254 (W.D. Tex. Oct. 7, 2019) .............................................................5

*Wet Sounds, Inc. v. Audio Formz, LLC*,
2017 WL 4547916 (W.D. Tex. Oct. 11, 2017), *report and recommendation
adopted*, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) .........................................7

*XY, LLC v. Trans Ova Genetics, LC*,
2017 WL 5505340 (W.D. Tex. Apr. 5, 2017)..........................................................7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**STATUTES**

28 U.S.C. § 1404(a) ......................................................................................................... 1, 3

Pursuant to 28 U.S.C. § 1404(a), Defendant Google LLC ("Google") seeks transfer of this action to the Northern District of California ("NDCA").  The lawsuit by Plaintiff Parus Holdings Inc. ("Parus") against Google should be transferred to NDCA because it has everything to do with California and nothing to do with Texas.  The most relevant witnesses in this case are Google's employees knowledgeable about Google Assistant, who are centered in NDCA.  Parus itself has witnesses in NDCA—Chief Technical Officer Salil Pradhan and Chief Marketing Officer Darius Reneau.  In addition, NDCA was a hub for development of commercially available prior art telephonic web browsing systems and intelligent agents which predate Parus's alleged inventions. Conversely, neither Parus nor Google has any relevant connections to this District.  Google does not have Google Assistant engineers in the Western District of Texas ("WDTX").  And Parus has no ties to this District whatsoever.  NDCA is the clearly more convenient forum.

## I.      FACTUAL BACKGROUND

### A.      Google Assistant Documents And Witnesses Are Located In NDCA

Parus accuses features of Google Assistant of infringing U.S. Patent Nos. 7,076,431 and 9,451,084 (collectively, the "Asserted Patents").  *See Parus v. Google,* No. 6:19-cv-433, Dkt. 20, ¶¶ 23, 65.

Google witnesses knowledgeable about the accused functionality in Google Assistant are located in NDCA.  Google is headquartered in Mountain View, California, and the majority of Google's worldwide workforce is in NDCA.  Declaration of Shannon Shaper ("Shaper Decl.") ¶ 2. Google researches, designs, develops, and tests the accused functionality in NDCA.  *Id.* ¶¶ 4-5. The Google engineers who could provide competent testimony about the accused functionality— including functionality for retrieving information from websites and summarizing it—work primarily from Google's Mountain View offices and reside in the San Francisco Bay Area.  *Id.* For instance, the Senior Staff Software Engineer and his team of 11 engineers who work on

answering questions from the open web are based in Mountain View. *Id*. ¶ 4. Additionally, the Director and majority of his team responsible for summarizing web page excerpts to provide a succinct response to user queries are based in Mountain View. *Id*. ¶ 5. Conversely, not a single engineer who works on the accused functionality in Google Assistant works out of WDTX. *Id*. ¶ 6.

Finally, technical documents generated by the foregoing employees are created and maintained in Google's Mountain View offices. *Id*. ¶ 7. Any relevant hard copy documents in the custody of these witnesses would be located in NDCA. No such physical documents would be located in WDTX.

**B.     Relevant Parus Witnesses And Evidence Are Located In NDCA**

While Parus is a Delaware corporation headquartered in Illinois, multiple Parus executives with relevant information reside in NDCA. Parus's Chief Technical Officer, Salil Pradhan, is located in San Jose, California (Ex. A[1]), and its Chief Marketing Officer, Darius Reneau, is likewise located in the San Francisco Bay Area (Ex. B). These constitute two out of five listed members of Parus's management team. Ex. C. Any relevant documents in the possession of Messrs. Pradhan and Reneau would likely be located in NDCA.

Google is not aware of any Parus witnesses or documents located in WDTX.

**C.     Third-Party Witnesses And Evidence Are Located In NDCA**

NDCA was a hub for the development of telephonic web browsing systems and intelligent agents during the dot com era, in and before 2000. These systems are highly relevant prior art. Examples of such systems and the knowledgeable witnesses who reside in NDCA include:

| Company | Company Location | Witnesses | Roles |
|---|---|---|---|
| Tellme Networks (Exs. D-1 to D-2) | Mountain View | Mike McCue | Founder |

---

[1] References to Ex. __ refer to exhibits attached to the Declaration of Bill Trac.

| Company | Company Location | Witnesses | Roles |
|---|---|---|---|
| BeVocal, Inc. (Exs. E-1 to E-3) | Mountain View | Mikael Berner, Steve Tran | Founders |
| SRI International (Exs. F-1 to F-5) | Palo Alto | Douglas Moran, Adam Cheyer, Luc Julia, David Martin | Open Agent Architecture Developers |
| General Magic (Exs. G1 to G2) | Mountain View | Kevin Surace | EVP Network Solutions |

By the time Parus filed the Asserted Patents, companies had already released telephonic web browsing systems, with 800 numbers that users could call to obtain web information, precisely the type of system that Parus describes in the specification of its Asserted Patents. For example, by 2000, Tellme Networks provided an 800 number "combining the power of the Internet with the convenience of the telephone" that allowed users to "instantly find and connect with restaurants, airlines, movie listings, news, weather, sports, stock quotes, traffic, friends, and more." Ex. D-1. Similarly, by 2000, BeVocal Inc. "provid[ed] quick and convenient access to personalized Internet content and services via telephone," using "spoken commands" to obtain "point-to-point driving directions, real-time traffic reports, flight information, stock quotes, and weather." Ex. E-1. SRI International—the organization that spun off Siri Inc.—developed well before 2000 its Open Agent Architecture that integrates speech recognition with a variety of applications. Ex. F-1. And in or around 1996, General Magic, led by Kevin Surace, its Executive Vice President of Network Solutions, began development of the Portico virtual assistant, also known as magicTalk, an early voice assistant. Exs. G-1 and G-2. The witnesses knowledgeable about each of these prior art references reside in NDCA.

## II.    LEGAL STANDARD

To evaluate transfer under § 1404(a), courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). If so, courts weigh eight private and public factors:

(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive[;] … [5] the administrative difficulties flowing from court congestion; [6] the local interest in having localized interests decided at home; [7] the familiarity of the forum with the law that will govern the case; and [8] the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315 (internal quotations and citation omitted).

## III.     NDCA IS A CLEARLY MORE CONVENIENT FORUM THAN WDTX

NDCA is the most convenient forum for this case because this case could have been brought in NDCA, and nearly all of the relevant witnesses and documents are located in NDCA.  This includes the Google engineers who develop Google Assistant, Parus's Chief Technology Officer and Chief Marketing Officer, and key third-party engineers who developed and released publicly available prior art systems before Parus filed its first patent on the technology.  Conversely, neither Parus nor Google has any relevant ties to this District.  While Google has offices in Austin, the relevant inquiry is whether Google has a presence that is ***related*** to the litigation.  *See DataQuill, Ltd. v. Apple Inc.*, 2014 WL 2722201, at *5 (W.D. Tex. June 13, 2014) (granting transfer from WDTX to NDCA because "[t]here is no dispute [defendant] has a presence in this district, but that presence is unrelated to this litigation").  No witnesses relevant to this litigation are located in WDTX.  "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

### A.     This Case Could Have Been Filed In NDCA

Google is headquartered in NDCA, and allegedly infringing devices have been sold in NDCA.

**B.**     **All Private Interest Factors Heavily Favor Transfer To NDCA**

All relevant party and third-party evidence is in NDCA, and no party or third party has any connection to WDTX.  The private interest factors weigh heavily in favor of transfer.

**1.**     **Cost Of Attendance For Willing Witnesses**

The cost of attendance for willing witnesses factor relates to the relative convenience of each forum to witnesses in the litigation, including costs in time and money.  "The convenience of the witnesses is probably the single most important factor in the transfer analysis."  *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (internal citation omitted).  When considering the convenience of witnesses, "the relative convenience to key witnesses is accorded greater weight." *VLSI Tech., LLC v. Intel Corp.*, No. 6:19-cv-254, Dkt. 78 at 7 (W.D. Tex. Oct. 7, 2019).

Here, the cost of attendance for willing witnesses overwhelmingly favors transfer to NDCA. Not a single relevant witness is located in this District.  NDCA, by contrast, is the home district of most of the key party and non-party witnesses.  Google's key witnesses are Google's engineers who know about the research, design, development, and testing of Google Assistant, who live and work in NDCA.  *Supra* § I.A; Shaper Decl. ¶¶ 4-5.  These are the witnesses who can describe how the Google Assistant technology that Parus accuses of infringement works.

Parus's witnesses also live in NDCA, including two of five Parus executives.  *Supra* § I.B. Parus's Chief Technical Officer Salil Pradhan likely has knowledge of the operation and marketing of Parus's products and how Parus's products allegedly practice the patents.  Chief Marketing Officer Darius Reneau likely has knowledge of Parus's product marketing, any alleged competition between Parus and Google, and the alleged importance of the claimed features to consumers.

Third-party prior art witnesses located in NDCA are also important in this litigation, as commercially available prior art systems were developed and sold in NDCA before the filing of the

Asserted Patents.  *Supra* § I.C.  By the time Parus applied for its Asserted Patents, Tellme and

BeVocal had been selling products implementing the same telephonic web browsing functionality

described  in those applications, and SRI and General Magic had already developed computer agent

technology.  Google frequently calls on inventors of system prior art to testify at trial.  *See, e.g.*, Exs.

H and I (trial testimony of two prior art witnesses in a previous case involving Google and its current

counsel).  Moreover, these witnesses would only be within the subpoena power of NDCA, not

WDTX.

"It is an 'obvious conclusion' that it is more convenient for witnesses to testify at home."

*Volkswagen*, 545 F.3d at 317.  Witnesses who have to leave home "not only suffer monetary costs,

but also the personal costs associated with being away from work, family, and community."  *Id.*  The

inconvenience of haling all of these key party and non-party witnesses from their homes in NDCA

to WDTX is massive.  Absent transfer, all of the affected Google, Parus, and third-party witnesses

must fly and drive to Waco for trial and any hearings that require their testimony, rather than simply

driving from their homes, resulting in costly and unnecessary travel expense, decreased employee

productivity, and disruption to the personal lives of these witnesses, their families, and their

communities.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).

Haling Google engineers over 1,400 miles from their home district to WDTX is highly

inconvenient.  "When the distance between an existing venue for trial of a matter and a proposed

venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in

direct relationship to the additional distance to be traveled."  *Volkswagen*, 545 F.3d at 317 (citation

omitted).  There is no direct flight from the Bay Area to Waco.  Commercial flights to Waco from

the Bay Area require at least 5 hours of flight time (including a layover in Dallas), even before

accounting for time spent waiting at the airport and traveling to and from the airport, let alone the

Case 6:19-cv-00432-ADA   Document 60   Filed 01/03/20   Page 11 of 16


risk of missing a tight connection.  Trac Decl. ¶ 19, Ex. J.  Conversely, if this case were transferred

to NDCA, Google engineers and willing third-party prior art witnesses could readily travel back and

forth between court and their homes—a far more convenient result.  As this District has recognized,

"the task of scheduling fact witnesses so as to minimize the time when they are removed from their

regular work or home responsibilities gets increasingly difficult and complicated when the travel

time from their home or work site to the court facility is five or six hours one-way as opposed to 30

minutes or an hour."  *Wet Sounds, Inc. v. Audio Formz, LLC*, 2017 WL 4547916, at *3 (W.D. Tex.

Oct. 11, 2017), *report and recommendation adopted*, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018).

The cost and inconvenience of travel from NDCA to WDTX for Google, Parus, and third-

party witnesses is enormous.  Conversely, no relevant witness is at home in WDTX—Parus

identified none in opposing Apple's motion to transfer to NDCA.  This case is thus readily

distinguishable from those in which multiple party and third-party witnesses reside in WDTX.

*See, e.g.*, *Fintiv Inc. v. Apple Inc.*, 2019 WL 4743678, at *4 (W.D. Tex. Sept. 13, 2019), *aff'd sub*

*nom. In re Apple Inc.*, No. 2020-104, slip op. at 4-5 (Fed. Cir. Dec. 20, 2019).

This most important factor overwhelmingly favors transfer.

### 2.      Relative Ease Of Access To Sources Of Proof

The ease of access to sources of proof is a close second to convenience of witnesses in

relative importance among the transfer factors.  *Polaris Innovations Ltd. v. Dell, Inc.*, 2016 WL

7077069, at *11 (W.D. Tex. Dec. 5, 2016) ("ease of access to evidence" and "cost and convenience

for traveling witnesses" are "the most important factors").  "In patent infringement cases, the bulk

of the relevant evidence usually comes from the accused infringer."  *Genentech*, 566 F.3d at 1345.

"Consequently, the place where the defendant's documents are kept weighs in favor of transfer to

that location."  *Id.*  To determine the ease of access to sources of proof, the Court should look at

"the location where the allegedly infringing products were researched, designed, developed and

GOOGLE'S MOT. FOR                                   -7-                          6:19-cv-00432-ADA
TRANSFER TO NDCA                                                                 6:19-cv-00433-ADA

tested." *XY, LLC v. Trans Ova Genetics, LC*, 2017 WL 5505340, at \*13 (W.D. Tex. Apr. 5, 2017).

Google researches, designs, develops, and tests Google Assistant in NDCA. *Supra* § I.A. Two of five executives for Parus live in the San Francisco Bay Area, suggesting that Parus documents are also located in NDCA. *Supra* § 1.B. And prior art witnesses and evidence are also located in NDCA, including Tellme Networks, BeVocal Inc., SRI International, and General Magic, organizations founded in Silicon Valley whose personnel remain in NDCA. *Supra* § I.C. In contrast, there is no indication that any relevant evidence is in WDTX—no relevant witnesses or documents are located there. Thus, the relative ease of access to sources of proof clearly favors transfer.

### 3.      Availability Of Compulsory Process

The compulsory process factor focuses on unwilling, non-party witnesses. *Datascape, Ltd. v. Dell Techs., Inc.*, 2019 WL 4254069, at \*2 (W.D. Tex. June 7, 2019). Google has identified six executives of three important companies that sold widely available prior art systems—Tellme Networks, BeVocal, Inc., and General Magic—as well as four specific developers of SRI's prior art Open Agent Architecture system. *Supra* § I.C. These third parties are within the subpoena power of NDCA, but outside of this Court's trial subpoena power, and thus could not be compelled to testify if this case remained in WDTX. By comparison, Google is not aware of any relevant third-party witnesses in WDTX. This factor thus weighs heavily in favor of transfer to NDCA.

### 4.      Practical Problems For An Easy, Expeditious, And Inexpensive Case

Judicial economy favors transfer to NDCA. First, this case is in its early stages: the initial case schedule has just been entered, and discovery has yet to be opened. Thus, transfer at this point would not cause delays. Second, NDCA is a significantly more convenient venue for all of the cases that have been filed by Parus, as indicated by each of the transfer motions that have been or that are expected to be filed.

LG is moving for transfer to NDCA.  LG is accused of infringing the Asserted Patents based on its use of Google Assistant on LG's devices, making Google a key third party located in NDCA.  *See Parus v. LG*, No. 6:19-cv-437, Dkt. 30, ¶¶ 18, 61.

Apple also has moved to transfer to NDCA.  Apple is similar to Google in that Apple's headquarters and the bulk of its design and development work on Siri is in NDCA.  *See Parus v. Apple*, No. 6:19-cv-432, Dkt. 42 at 2-4.

Google expects that Samsung will move to transfer to NDCA.  Samsung, like LG, is accused of infringing the Asserted Patents based on its use of Google Assistant on Samsung's devices, making Google a key third party located in NDCA.  *See Parus v. Samsung*, No. 6:19-cv-438, Dkt. 22, ¶¶ 18, 65.

Finally, in moving for intra-district transfer to Austin, Amazon specifically agreed that transfer to NDCA is acceptable.  *See Parus v. Amazon*, No. 6:19-cv-454, Dkt. 20 at 1, n.1.  Amazon's relevant engineers are in Austin, California, and Seattle.  *Id.* at 4-5.  And Amazon specifically has relevant engineers in its offices in Sunnyvale, in NDCA.  *Id.*, Dkt. 20-1, ¶ 5 (Declaration of Tim Thompson).

Because NDCA is a clearly more convenient forum for Google, LG, Samsung, and Apple, and is also a convenient forum for Amazon, judicial economy favors transfer of Google's case and the remaining cases to NDCA.

In short, NDCA is the most practical venue for all of the Parus litigations.  Under Federal Circuit precedent, "the combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiffs chosen forum is an important consideration" in deciding transfer.  *Acer*, 626 F.3d at 1255.  For all parties, the strong ties to NDCA and nonexistent relevant ties to WDTX (save for Amazon) point strongly to NDCA as the

proper forum for Parus's lawsuits.

**C.    The Public Interest Factors Weigh In Favor Of Transfer**

The public interest factors also weigh in favor of transfer.  NDCA has a strong local interest in this dispute:  Google was founded in NDCA, where it still maintains its headquarters and largest offices and where Google developed the accused features and products in this case.  *See supra* § I.A.  By contrast, neither Google nor Parus has any local ties to Waco, and no development work on Google Assistant occurred in Google's Austin offices.  The familiarity with governing law and conflict of laws factors are neutral as both NDCA and this District are familiar with, and will apply, federal patent law.  As for administrative difficulties, while this Court's default schedule is 25% faster than NDCA's time to trial, this factor should be given the least weight as the Federal Circuit has held that time to trial "appears to be the most speculative" of the factors in the transfer analysis. *Fintiv*, 2019 WL 4743678, at *7; *Genentech*, 566 F.3d at 1347.

**IV.    CONCLUSION**

For the foregoing reasons, Google respectfully requests the Court transfer this case to NDCA.

Dated:  January 3, 2020                                 /s/ Steve McConnico

                                                        Steve McConnico
                                                        Texas State Bar No. 13450300
                                                        smcconnico@scottdoug.com
                                                        Paige Arnette Amstutz
                                                        Texas State Bar No. 00796136
                                                        pamstutz@scottdoug.com
                                                        SCOTT, DOUGLASS & MCCONNICO, LLP
                                                        303 Colorado Street, Suite 2400
                                                        Austin, TX 78701
                                                        Telephone: (512) 495-6300
                                                        Facsimile: (512) 495-6399

                                                        Darin W. Snyder (*Pro Hac Vice*)
                                                        dsnyder@omm.com
                                                        Luann L Simmons (*Pro Hac Vice*)
                                                        lsimmons@omm.com
                                                        David S. Almeling (*Pro Hac Vice*)
                                                        dalmeling@omm.com
                                                        Mark Liang (*Pro Hac Vice*)
                                                        mliang@omm.com
                                                        Bill Trac (*Pro Hac Vice*)
                                                        btrac@omm.com
                                                        Daniel Silverman (*Pro Hac Vice*)
                                                        dsilverman@omm.com
                                                        **O'MELVENY & MYERS LLP**
                                                        Two Embarcadero Center
                                                        28th Floor
                                                        San Francisco, CA 94111-3823
                                                        Telephone: 415-984-8700
                                                        Facsimile: 415-984-8701

                                                        ***Attorneys for Defendant Google LLC***

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), counsel for Google conferred with counsel for Parus on December 31, 2019 in a good-faith effort to resolve the matter presented herein and counsel for Parus stated that it opposed the motion.

/s/ Steve McConnico
Steve McConnico

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on January 3, 2020, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

/s/ Steve McConnico
Steve McConnico