**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| PARUS HOLDINGS INC., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | C.A. No.: 6:19-cv-00432-ADA <br> (Lead Case) <br><br> <u>JURY TRIAL DEMANDED</u> |
| PARUS HOLDINGS INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | C.A. No.: 6:19-cv-00433-ADA <br> (Consolidated Case) <br><br> <u>JURY TRIAL DEMANDED</u> |
| PARUS HOLDINGS INC., <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS INC. and LG ELECTRONICS U.S.A., INC., <br><br> Defendants. | C.A. No.: 6:19-cv-00437-ADA <br> (Consolidated Case) <br><br> <u>JURY TRIAL DEMANDED</u> |

PARUS HOLDINGS INC.,

Plaintiff,

v.

SAMSUNG ELECTRONICS CO., LTD. and
SAMSUNG ELECTRONICS AMERICA,

Defendants.

C.A. No.: 6:19-cv-00438-ADA
(Consolidated Case)

JURY TRIAL DEMANDED

PARUS HOLDINGS INC.,

Plaintiff,

v.

AMAZON.COM, INC.,

Defendant.

C.A. No.: 6:19-cv-00454-ADA
(Consolidated Case)

JURY TRIAL DEMANDED

**PLAINTIFF PARUS HOLDINGS INC.'S
OPENING BRIEF REGARDING CLAIM CONSTRUCTION**

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     THE ASSERTED PATENTS .................................................................................2

III.    LEGAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION ...................6

        A.    Indefiniteness ..............................................................................................7

        B.    Means-Plus-Function ..................................................................................7

IV.     LEVEL OF SKILL OF SKILL IN THE ART .....................................................7

V.      DISPUTED CLAIM TERMS FOR CONSTRUCTION .......................................8

        A.    Claim Term Parus Proposed .......................................................................9

              1.    "voice enabled device" ('431 claim 1; '084 claim 1) ......................9

                    a.    The Court should adopt Parus's articulation of the plain and
                          ordinary meaning of this term. ..........................................9

                    b.    Defendants' proposal seeks to import unsupported
                          limitations. ........................................................................12

        B.    Jointly Proposed Claim Terms ..................................................................13

              1.    "speaker-independent speech recognition device" ('431 claims 1, 5, 6;
                    '084 claims 1, 5, 6) ....................................................................13

                    a.    Parus's proposal reflects the proper scope and context of
                          the claim term. ..................................................................14

                    b.    Defendants' artificially limiting and differing proposals are
                          contradicted by the intrinsic and extrinsic evidence. ......16

              2.    "recognition grammar" ('431 claim 1; '084 claim 1) ..................20

                    a.    Parus's proposal comports with the intrinsic record and
                          provides welcome clarity to the term of art. ....................20

                    b.    Absent any justification in the intrinsic record, Defendants'
                          proposals improperly seek to limit the scope of the claim
                          term. ..................................................................................21

        C.    None of the Terms Defendants Propose for Construction Require
              Anything Other Than Their Plain and Ordinary Meaning.......................23

              1.    "web site" ('431 claims 1, 7, 9, 10, 13, 14; '084 claims 1, 7, 10, 14) .......24

              2.    "select the corresponding recognition grammar upon receiving [said/the]
                    speech command" ('431 claim 1; '084 claim 1)........................26

              3.    "access at least one of [said/the] plurality of web sites identified by
                    [said/the] instruction set to obtain [said/the] information to be retrieved"
                    ('431 claim 1; '084 claim 1) ......................................................28

       D.     None of the Disputed Terms Are Indefinite or Means-Plus-Function Under
             35 U.S.C. § 112, ¶ 6 ............................................................................................29

VI.    CONCLUSION ....................................................................................................................30

PLAINTIFF PARUS HOLDINGS INC.'S OPENING BRIEF REGARDING CLAIM CONSTRUCTION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*,
  725 F.3d 1315 (Fed. Cir. 2013)..............................................................27

*Allergan, Inc. v. Barr Labs., Inc.*,
  501 F. Appx 965 (Fed. Cir. 2013)..............................................................8

*Cox Commc'ns., Inc. v. Sprint Commc'n. Co. LP*,
  838 F.3d 1224 (Fed. Cir. 2016)..............................................................7

*Digital Retail Apps, Inc. v. H-E-B LP*,
  Civ. No. 6-19-CV-00167-ADA,
  2020 U.S. Dist. LEXIS 11094 (Jan. 23, 2020) (Albright, J.)................6, 7

*Innovative Memory Sys. v. Micron Tech., Inc.*,
  784 F. Appx 771 (Fed. Cir. 2019)..........................................................23

*Intamin Ltd. v. Magnetar Techs., Corp.*,
  483 F.3d 1328 (Fed. Cir. 2007)........................................................12, 16

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014)........................................................7, 30

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004)........................................................12, 23

*Lyons v. Nike*,
  No. 9-cv-1183, 2010 WL 5812956 (D. Ore. Sept. 28, 2010) ................27

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995)..................................................................6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014)..............................................................................30

*Noah Sys., Inc. v. Intuit Inc.*,
  675 F.3d 1302 (Fed. Cir. 2012)..............................................................30

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)..............................................................9

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc)...................................... *passim*

*Real Time Data, LLC v. Iancu,*
   912 F.3d 1368 (Fed. Cir. 2019).................................................................................11

*Rotatable Techs. LLC v. Nokia,*
   2013 U.S. Dist. LEXIS 108376 (E.D. Tex. Aug. 1, 2013) .....................................27

*Rothschild Connected Devices Innovations, LLC v. Coca-Cola Co.,*
   No. 2019-1825, 2020 U.S. App. LEXIS 15877 (Fed. Cir. May 18, 2020)............................22

*Serverside Grp. v. Tactical 8 Techs.,*
   927 F. Supp. 2d 623 (N.D. Iowa 2013).................................................................27

*Toro Co. v. White Consolidated Indus. Inc.,*
   199 F.3d 1295 (Fed. Cir. 1999).............................................................................8

*Toshiba Corp. v. Imation Corp.,*
   681 F.3d 1358 (Fed. Cir. 2012)...................................................................*passim*

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.,*
   595 F.3d 1340 (Fed. Cir. 2010).....................................................................12, 23

*United Access Techs., LLC v. AT&T Corp.,*
   757 Fed. Appx. 960 (Fed. Cir. 2019)..............................................................7, 30

*Vita-Mix Corp. v. Basic Holding, Inc.,*
   581 F.3d 1317 (Fed. Cir. 2009).............................................................................29

*Williamson v. Citrix Online, LLC,*
   792 F.3d 1339 (Fed. Cir. 2015)......................................................................7, 29

**Statutes**

35 U.S.C. § 112, ¶ 2 ...........................................................................................................7

35 U.S.C. § 112, ¶ 6 ..................................................................................................*passim*

PLAINTIFF PARUS HOLDINGS INC.'S OPENING BRIEF REGARDING CLAIM CONSTRUCTION

**TABLE OF DISPUTED CLAIM TERMS FOR CONSTRUCTION**

| U.S. Patent Nos. 7,076,431 & 9,451,084 | | | |
|---|---|---|---|
| Claim | | Plaintiff's Proposed Construction | Defendants' Proposed Constructions |
| | **Plaintiff Proposed Claim Terms** | | |
| '431: 1 '084: 1 | "voice enabled device" | A wired or wireless voice communication device associated with audio input (e.g., a microphone) and audio output (e.g., a speaker) capabilities | All Defendants: "wireline or wireless telephone, IP phone, wireless PDA, or other wireless device" |
| | **Jointly Proposed Claim Terms** | | |
| '431: 1, 5, 6 '084: 1, 5, 6 | "speaker-independent speech recognition device" | Device capable of recognizing spoken audible inputs that need not be trained to recognize the voice patterns of an individual user | **Amazon, Apple:** "speech recognition device that does not adapt to individual speakers" **Google, LG, Samsung:** "speech recognition device that does not use predefined voice patterns to recognize spoken words" |
| '431: 1 '084: 1 | "recognition grammar" | What a user can say in natural language that will be recognized by the speech recognition device | **Google, LG, Samsung:** "a predefined subset of words and predefined rules specifying the sequences in which a user can put those words so that they can be recognized by the speech recognition engine" **Amazon, Apple:** "predefined set of words and phrases a user can say that will be recognized by the speech recognition engine" |
| | **Defendants Proposed Claim Terms** | | |
| '431: 1, 7, 9, 10, 13, 14 '084: 1, 7, 10, 14 | "web site" | Plain and ordinary meaning | All Defendants: "collection of linked and related web pages for browsing by a user with a web browser" |

| U.S. Patent Nos. 7,076,431 & 9,451,084 | | | |
|---|---|---|---|
| Claim | | Plaintiff's Proposed Construction | Defendants' Proposed Constructions |
| '431: 1<br>'084: 1 | select the corresponding recognition grammar upon receiving [said/the] speech command | Plain and ordinary meaning | **Amazon, Google, LG, Samsung:** "upon receiving [said/the] speech command, select the recognition grammar for the corresponding category of information" |
| '431: 1<br>'084: 1 | "instruction set for identifying [said/the] information to be retrieved" | Plain and ordinary meaning | **Amazon:** Governed by pre-AIA 35 U.S.C. § 112, ¶ 6. Function: identifying [said/the] information to be retrieved Structure: Indefinite |
| '431: 1<br>'084: 1 | "access at least one of [said/the] plurality of web sites identified by [said/the] instruction set to obtain [said/the] information to be retrieved" | Plain and ordinary meaning | **Google, LG, Samsung:** "search at least one of [said/the] plurality of web sites identified by [said/the] instruction set to obtain [said/the] information to be retrieved, not including retrieving a specific resource from a specific web site" |
| '084: 1 | "the speech command comprising an information request provided by the user" | Plain and ordinary meaning | **Google, LG, Samsung:** Indefinite |
| '431: 1 | "said computer configured to first access said first web site of said plurality of web sites and, if said information to be retrieved is not found at said first web site, said computer configured to sequentially access said plurality of web sites until said information to be retrieved is found or until said plurality of web sites has been accessed" | Plain and ordinary meaning | **Amazon:** Governed by pre-AIA 35 U.S.C. § 112, ¶ 6. Function: first accessing said first web site of said plurality of web sites and, if said information to be retrieved is not found at said first web site, sequentially accessing said plurality of web sites until said information to be retrieved is found or until said plurality of web sites has been accessed Structure: computer performing algorithm described in the specification of the '431 Patent at 7:14-34 and Tables 3, 4. |

| U.S. Patent Nos. 7,076,431 & 9,451,084 | | | |
|---|---|---|---|
| **Claim** | | **Plaintiff's Proposed Construction** | **Defendants' Proposed Constructions** |
| **'084: 1** | "the computing device configured to access a first web site of the plurality of web sites and, if the information to be retrieved is not found at the first web site, the computer configured to access the plurality of web sites remaining in an order defined for accessing the listing of web sites until the information to be retrieved is found in at least one of the plurality of web sites or until the plurality of web sites have been accessed" | Plain and ordinary meaning | **Amazon:** Governed by pre-AIA 35 U.S.C. § 112, ¶ 6. <u>Function</u>: accessing a first web site of the plurality of web sites and, if the information to be retrieved is not found at the first web site, accessing the plurality of web sites remaining in an order defined for accessing the listing of web sites until the information to be retrieved is found in at least one of the plurality of web sites or until the plurality of web sites have been accessed <u>Structure</u>: computer performing algorithm described in the specification of the '084 Patent at 7:27-48 and Tables 3, 4. |

## I.      INTRODUCTION

For construction in this consolidated case are nine disputed terms from United States Patent No. 7,076,431 and United States Patent No. 9,451,084 (together, the "Asserted Patents"), which are generally directed to innovative voice-controlled information retrieval systems.

Of the nine total claim terms in dispute, Parus contends that only three require further clarification and articulation. The Court should provide a specific articulation for these three claim terms in order to provide the jury with helpful clarity, to resolve the apparent dispute among the parties, and to honor the proper scope of each claim term viewed through the eyes of a skilled artisan in the context of the shared specification of the Asserted Patents. Parus's proposals for these three claim terms are the most appropriate reflection of how a person skilled in the art at the time of the invention would have understood the usual scope of the claim language. By contrast, Defendants' proposed constructions for each of these three claim terms are too narrow, artificially constrain the proper scope of the claim language, and improperly seek to read limitations from the specification into the claims in violation of black letter patent law. In fact, not even Defendants can agree amongst themselves what the proper constructions should be for two of the six terms they solely proposed for construction, and instead propose competing constructions. This only underscores the infirmities in their positions.

Moreover, none of the claim terms for which Amazon—alone among the Defendants— seeks application of pre-AIA 35 U.S.C. § 112, ¶ 6 should be construed as means-plus-function terms. Contrary to its position, each of these claim terms, when viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty, including by providing objective boundaries for those skilled artisans. Amazon cannot rebut the presumption that the lack of the term "means" in the claim language is

the end of the analysis—the terms are not means-plus-function. Defendants also seek a finding of indefiniteness for two claim terms, one through application of pre-AIA 35 U.S.C. §112, ¶6 and one through application of indefiniteness law. But they cannot meet their heavy burden of showing indefiniteness by clear and convincing evidence for any claim term.

The Court should adopt Parus's proposals for each of the disputed claim terms.

## II.   THE ASSERTED PATENTS

As noted, in this case Parus asserts United States Patent No. 7,076,431 (the "'431 patent"), attached as **Exhibit 1**, and United States Patent No. 9,451,084 (the "'084 patent"), attached as **Exhibit 2**. Both patents are entitled "Robust Voice Browser System and Voice Activated Device Controller," and they share a specification. The '084 patent is a continuation of the '431 patent, with several intervening relatives. The face of the patents claim priority back to the filing of a provisional application on February 4, 2000.

The inventors identified problems in the prior art that they sought to address with their novel solutions. As the shared specification describes, at the time there existed limited options for users wishing to quickly gather information from a web site accessible over the Internet, each having distinct drawbacks. *See* Ex. 1 at 1:30-43. These limited options included (1) large, bulky, and non-portable desktop computers; (2) very expensive Personal Digital Assistants (PDAs), which required expensive service plans for Internet access and could only access web sites specially designed to be compatible with PDAs (which many web sites were not); and (3) web-phones or web-pagers that suffered from similar drawbacks. *See id.* at 1:42-2:24. As a result, the inventors identified a need for a system that allows users to easily access and retrieve information on the Internet from any location. In particular, a need existed for a dynamic, voice responsive system that, among other things, identifies modifications to web sites and adapts to such changes

in order to quickly and accurately provide information requested by a user through a voice enabled device. *See id.* at 2:31-42; 43-58.

The shared specification describes, among other things, embodiments directed to a voice browsing "system for acquiring information from sources on a network, such as the Internet." *See* Ex. 1, '431 patent at Abstract.[1] The specification teaches that, "[i]n response to a speech command received from a user, a network interface system accesses the information source … in order to retrieve information requested by the user." *Id.* One object of an embodiment of the invention is "to allow users to gather information from web sites by using voice enabled devices," and also to provide a system that "allows the searching and retrieving of publicly available information by controlling a web browsing server using naturally spoken voice commands." *Id.* at 2:62-3:3.

The specification describes a preferred embodiment that

> allows users to access and browse web sites when they do not have access to computers with Internet access. This is accomplished by providing a voice browsing system and method that allows users to browse web sites using conversational voice commands spoken into any type of voice enabled device … These spoken commands are then converted into data messages by a speech recognition software engine running on a user interface system. These data messages are then sent to and processed by a network interface system. This network interface system then generates the proper requests that are transmitted to the desired web site over the Internet. Responses sent from the web site are received and processed by the network interface system and then converted into an audio message via a speech synthesis engine or a prerecorded audio concatenation application and finally transmitted to the user's voice enabled device.

Ex. 1, '431 patent at 3:39-56. Figure 1 of the shared specification depicts an embodiment taught in the Asserted Patents, reproduced below:

---

[1] As the teaching of the respective specifications of the Asserted Patents is identical, Parus cites only to the disclosure of the '431 patent for efficiency's sake, unless otherwise specified.

PLAINTIFF PARUS HOLDINGS INC.'S OPENING BRIEF REGARDING CLAIM CONSTRUCTION



Some of the constituent elements in Fig. 1 are relevant to the claim construction analysis of the disputed terms. These include, for example, "database 100" (circled in blue in the diagram above), two items "web browsing server 102" (one of which is boxed in orange), and two items "media server 106" (one of which is boxed in green). Items 112, identified in the specification as depictions of the "user's voice enabled device," are circled in red. Ex. 1, '431 patent at 6:60.

The specification describes "database 100" in the preferred embodiment as containing

a separate set of records for each web site accessible by the system. An example of a web site record is shown in FIG. 2. Each web site record 200 contains the rank number of the web site 202, the associated Uniform Resource Locator (URL) 204, and a command that enables the appropriate 'extraction agent' 206 that is required in order to generate proper requests sent to and to format data received from the web site.

'431 patent at 5:3-11. Figure 2 depicts these exemplary items 202, 204, and 206:



*FIG. 2*

For its part, "media server 106" operates as the "user interface system[]." Ex. 1, '431 patent at 5:61-62. In particular, in the preferred embodiment, the media servers 106 contain, among other items, "a speech recognition engine 300, a speech synthesis engine 302, [and] an Interactive Voice Response (IVR) application 304, a call processing system 306, and telephony and voice hardware 208[.]" *Id.* at 63-66. The specification further teaches that the "speech recognition function [of the preferred embodiment] is performed by the speech recognition engine 300 that converts voice commands received from the user's voice enabled device 112 … into data messages." *Id.* at 6:5-8. The speech recognition engine 300 is depicted as part of the media server 106 of Figure 3 below.



*FIG. 3*

The specification identifies a preferred speech recognition engine as developed by Nuance Communications, and also teaches that the speech recognition engine 300 uses "natural speech recognition grammars (i.e., what a user can say that will be recognized by the speech recognition engine)." *Id.* at 6:16-24. Additionally, the media servers 106 of the preferred embodiment also "contain a speech synthesis engine 302 that converts the data retrieved by the web browsing servers 102 into audio messags [sic] that are transmitted to the user's voice enabled device 112." *Id.* at 6:57-60.

The "voice enabled device 112" of the preferred embodiment is described as any type of voice enabled device such as, for example, "wireline or wireless telephone, IP phone, wireless PDA, or other wireless device." Ex. 1, '431 patent at 2:62-65, 3:16-19, 3:39-46, 23:50-52. Also of note is claim 4 of both Asserted Patents because it further defines the "voice enabled device." Each claim 4 requires a system wherein the "voice enabled device is a standard telephone, an IP telephone, a cellular phone, a PDA, a personal computer, a DVD player, a television or other video display device, a CD player, a MP3 player, or any other device capable of transmitting said audio message." *Id*. at 20:45-50.

Moreover, the specification describes "web browsing server 102" as providing "access to any computer network such as the Internet 110 … [and the] web browsing servers receive responses from web sites and extract the data requested by the user." Ex. 1, '431 patent at 6:65-7:4. Once the web browsing server retrieves the information, it "is forwarded to the media server 106" for conversion into an audio message sent to the voice enabled device. *Id*. at 32-37.

## III.   LEGAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION

The purpose of claim construction is to "determin[e] the meaning and scope of the [asserted] patent claims." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). The analysis begins with the words of the claim, which are generally given their ordinary and customary meaning as understood by a person of skill in the art at the time of invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) (en banc).

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Digital Retail Apps, Inc. v. H-E-B LP*, Civ. No. 6-19-CV-00167-ADA, 2020 U.S. Dist. LEXIS

11094, at *5 (Jan. 23, 2020) (Albright, J.) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365-66 (Fed. Cir. 2012)). "To act as his/her own lexicographer, the patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the term.'" *Id.* "To disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent 'a clear disavowal of claim scope.'" *Id.*

### A.    Indefiniteness

Patent claims must be "definite" and "particularly point[] out and distinctly claim[] the subject matter that the applicant regards as the invention." 35 U.S.C. § 112, ¶ 2 (pre-AIA). Like other validity defenses, indefiniteness must be proven by clear and convincing evidence. *United Access Techs., LLC v. AT&T Corp.*, 757 Fed. Appx. 960, 969 (Fed. Cir. 2019); *Cox Commc'ns., Inc. v. Sprint Commc'n. Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016). It is enough that the claims, when read in light of the patent specification and prosecution history, "<u>provide objective boundaries</u> for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (emphasis added).

### B.    Means-Plus-Function

"To determine whether § 112, para. 6 applies to a claim limitation, [Federal Circuit] precedent has long recognized the importance of the presence or absence of the word 'means.'" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). "The standard is whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Id.* at 1349 (quotation omitted).

## IV.    LEVEL OF SKILL OF SKILL IN THE ART

As Parus's expert, Benedict Occhiogrosso, opines, a person of ordinary skill within the field of the Asserted Patents, which is voice-controlled information retrieval systems, around the late 1999 to early 2000 time period would have an electrical or computer engineering background

and practical experience in the field. Such a person would have a Bachelor's degree in electrical or computer engineering, or in a related field, and at least two years of work experience relating to web-based information retrieval systems, speech recognition and interactive voice response systems, or related systems. *See* Declaration of Benedict Occhiogrosso ("Occhiogrosso Decl."), filed contemporaneously with this brief, at ¶ 52.[2]

## V.    DISPUTED CLAIM TERMS FOR CONSTRUCTION

As noted, Parus contends that only three claim terms require an articulation of their plain and ordinary meanings in order to provide the jury with necessary clarity, to resolve the disputes among the parties, and to honor the appropriate scope of each claim term viewed through the eyes of a skilled artisan in the context of the entirety of the shared specification of the Asserted Patents. *Allergan, Inc. v. Barr Labs., Inc.*, 501 F. Appx 965, 969-70 (Fed. Cir. 2013); *Toro Co. v. White Consolidated Indus. Inc.*, 199 F.3d 1295, 1301 (Fed. Cir. 1999) (claim terms are not construed in a "vacuum, but in the context of the specification and drawings"). The remainder of the claim terms are placed in issue by Defendants.

As to all terms, Defendants attempt to improperly read limitations into the claim language without support in the intrinsic record, and cannot even agree amongst themselves as to which of these unjustified limitations the Court should adopt. As for the six terms proposed by Defendants, these need no construction and should be afforded their plain and ordinary meanings. Further, Defendants will not substantiate their position that certain claim terms should be construed as means-plus-function terms in order to drum up an unsupportable indefiniteness argument. Defendants can neither meet their heavy burden of showing indefiniteness for any claim term by

---

[2] Mr. Occhiogrosso also offers a background of the technology in his declaration, which may be helpful to the Court. *See* Occhiogrosso Decl. at ¶¶ 33-51.

clear and convincing evidence, nor rebut the presumption that, as here, claims lacking the word "means" are not means-plus-function.

The Court should adopt Parus's position as to all terms in dispute.

### A.    Claim Term Parus Proposed

#### 1.    "voice enabled device" ('431 claim 1; '084 claim 1)

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "voice enabled device" | A wired or wireless voice communication device associated with audio input (e.g., a microphone) and audio output (e.g., a speaker) capabilities | All Defendants: "wireline or wireless telephone, IP phone, wireless PDA, or other wireless device" |

Parus's only proposed claim term that was not also proposed by Defendants is "voice enabled device." Because the parties dispute the plain and ordinary meaning of the term "voice enabled device" and propose conflicting constructions, it should be clarified by the Court—and as Parus contends. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). Of the competing proposals, Parus's aligns most closely with the teachings of the specification and accurately reflects the proper scope of the claim term as drafted. *See* Occhiogrosso Decl. at ¶ 63. The specification is clear that <u>any type</u> of "voice enabled device" is within the ambit of the claim term, and further teaches that such a device is associated with both audio input and audio output capabilities. By contrast, Defendants' proposal is overly limiting, improperly seeks to read aspects of just one embodiment from the specification into the claims, and injects unnecessary ambiguity and potential uncertainty into the meaning of the claim term.

##### a.    <u>The Court should adopt Parus's articulation of the plain and ordinary meaning of this term</u>.

The Court should adopt Parus's proposal for "voice enable device." The first paragraph of the "Summary of the Invention" section of the specification shared by both of the Asserted Patents gives broad examples of what constitutes a "voice enabled device" in the context of the invention.

In particular, "[i]t is an object of an embodiment of the present invention to allow users to gather information form web sites by using voice enabled devices, such as wireline or wireless telephones." *See* Ex. 1, '431 patent at 2:62-65 (emphasis added). Underscoring the breadth of the term, the specification further describes an embodiment that allows use of the invention by "conversational voice commands spoken into wireless or wireline telephones or other voice enabled devices." Ex. 1 at 3:16-19 (emphasis added). Further, the specification also teaches that "a preferred embodiment" of the invention allows use of "conversational voice commands spoken into *any type* of voice enabled device[.]" Ex. 1 at 3:39-46 (emphasis added), *see also* Ex. 1 at 23:50-52 (describing a different embodiment). Therefore, according to the teaching of the specification, the claimed "voice enabled device" can be any type of such a device.

The shared specification further teaches one of skill in the art what the attributes of such a voice enabled device are, namely a voice communication device associated with audio input and audio output capabilities. This is apparent from the claim language alone. For example, claim 1 of the '431 patent requires that the voice enabled device be "configured to receive speech commands from users." Ex. 1 at 19:61-63 (emphasis added). The preamble of claim 1 of the '084 patent indicates that the voice enable device is capable of "receiving speech commands uttered by users into" it. Ex. 2, '084 patent at 24:3-5. Apart from evidencing the breadth of the different types of "voice enabled devices" within the meaning of the disputed claim term, the teachings noted above, that the invention can be used by speaking conversational voice commands into such a device, supports the conclusion that any such device is associated with audio input capabilities, such as a microphone. *See, e.g.*, Ex. 1 at 3:16-19, 3:39-46, 4:30-34 (describing using the invention "by using naturally spoken, conversational voice commands spoken into a voice enabled device") (emphasis

added). Accordingly, the voice enabled device of the claims is a voice communication device associated with audio input capabilities, such as a microphone.

In addition, the claimed voice enabled device is also associated with audio output capabilities, such as a speaker. As with the audio input capabilities discussed above, this too is apparent from the claims themselves. Claim 1 of the '431 patent requires that the voice enabled device be capable of transmitting audio messages to users "via said voice enabled device." Ex. 1 at claim 1, 20:36-40. For its part, claim 1 of the '084 patent requires that its speech synthesis device must be "configured to transmit the audio message to the users via the voice-enabled device." Ex. 2 at claim 1, 24:57-59. Moreover, the specification expressly teaches that a voice enabled device is capable of converting text-based information retrieved from the Internet "into an audio message" that is "transmitted to the user's voice enabled device." *See* Ex. 1 at 3:53-57, 4:59-63 (same), 6:57-60 (same), 15:34-37 (discussing conversion of information into audio messages for transmission), 16:27-30 (same). Accordingly, the claimed voice enabled device is a voice communication device associated with audio output capabilities, such as a speaker.

Principles of claim differentiation also support this conclusion. Claim 4 of each patent, which each depend from the respective claims 1, identifies a number of specific device types that can be the claimed voice enabled devices. For example, claim 4 of the '431 patent claims:

> The system of claim 1 wherein said voice enabled device is a standard telephone, an IP telephone, a cellular phone, a PDA, a personal computer, a DVD player, a television or other video display device, a CD player, a MP3 player, or <u>any other device capable of transmitting said audio message</u>.

Ex. 1 at 20:45-50 (emphasis added). The breadth of claims 4 is apparent—and, of course, the scope of the claimed voice enabled device of independent claim 1 is presumptively broader than such device of the narrower dependent claim 4. *See Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in

question is not present in the independent claim."); *see also Real Time Data, LLC v. Iancu*, 912 F.3d 1368, 1375 (Fed. Cir. 2019) (affirming Board's conclusion that where a disputed claim term "maintaining a dictionary" was subsequently defined in method steps in dependent claim, it "strongly suggested" that the dependent claim's method steps are just "one way of 'maintaining a dictionary'"); *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1335 (Fed. Cir. 2007) ("An independent claim impliedly embraces more subject matter than its narrower dependent claim."). As a result, the "voice enabled device" limitation of claim 1 before the Court requires an articulation that is broader than the device required by claims 4. Parus's proposal is the lone proposal before the Court that satisfies this requirement, and the Court should adopt it.

### b.   <u>Defendants' proposal seeks to import unsupported limitations.</u>

By contrast, Defendants' proposal, "wireline or wireless telephone, IP phone, wireless PDA, or other wireless device," is overly limiting on its face and seeks to import into the claim exemplary devices from one or more exemplary embodiments from the specification. The Court should not adopt their proposal for at least two reasons.

<u>First</u>, Defendants' erroneous construction is drawn verbatim from the specification's discussion of just one exemplary embodiment:

> [A] preferred embodiment of the present invention allows users to access and browse web sites when they do not have access to computers with Internet access. This is accomplished by providing a voice browsing system and method that allows users to browse web sites using conversational voice commands spoken into any type of voice enabled device (i.e., any type of <u>wireline or wireless telephone, IP phone, wireless PDA, or other wireless device</u>).

Ex. 1 at 3:39-46 (emphasis added). Notably, this example is narrower than a broader embodiment also taught in the specification, one that allows use of the invention by "conversational voice commands spoken into wireless or wireline telephones or <u>other voice enabled devices</u>." *Id.* at 3:16-19 (emphasis added). Importing into the claims limitations provided as examples in the

specification relating to just one embodiment of the invention—even a preferred embodiment—is contrary to settled Federal Circuit law. *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed. Cir. 2010) ("When consulting the specification to clarify the meaning of claim terms, courts <u>must not</u> import limitations into the claims from the specification.") (emphasis added); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004) ("[I]t is improper to read a limitation from the specification into the claims."). The Court should reject Defendants' invitation to do so.

<u>Second</u>, Defendants' proposal for this term is narrower than even the scope of claim 4, which, as discussed above, is by definition narrower than claim 1. One need look no farther than the fact that the only "wired" device contemplated or permitted by Defendants' proposed articulation of the claim term is a "wireline … telephone" (and, potentially, the "IP phone"). But this would exclude other wired voice enabled devices—even, for example, those using WiFi connectivity but plugged into a wall outlet, or those expressly claimed in the narrower claim 4, such as personal computers. *See* Ex. 1 at 20:44-50; *see also* Occhiogrosso Decl. at ¶ 64. Defendants' proposal is incorrect and the Court should adopt Parus's.

### B. Jointly Proposed Claim Terms

#### 1. "speaker-independent speech recognition device" ('431 claims 1, 5, 6; '084 claims 1, 5, 6)

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "speaker-independent speech recognition device" | Device capable of recognizing spoken audible inputs that need not be trained to recognize the voice patterns of an individual user | **Amazon, Apple:** "speech recognition device that does not adapt to individual speakers" **Google, LG, Samsung:** "speech recognition device that does not use predefined voice patterns to recognize spoken words" |

All parties contend that the claim term "speaker-independent speech recognition device" requires an articulation beyond the plain language of the term. Parus's proposed clarification of the plain and ordinary meaning of this claim term accurately captures its proper scope as drafted,

and as read in the proper context of the teachings of the intrinsic record. *See* Occhiogrosso Decl. at ¶ 65. The specification specifically teaches that the speaker independence aspect of the preferred embodiment is merely that the system does not <u>have</u> to be trained to recognize the specific voice patterns of an individual user, and that users are not required to learn a special language or command set to use the invention.

Unlike the overly narrow (and competing) proposals offered by Defendants, the claim term does <u>not</u> require that such a device cannot or must not be trained at any time—only that it is not required to be trained in order to operate in the first instance. Conspicuously, Defendants are unable to present a unified front and propose two differing meanings of the claim term. Both of their proposals are unsupportable in view of the claim language, the disclosures of the specification, and the knowledge of one skilled in the art. *See* Occhiogrosso Decl. at ¶¶ 66-67. The Court should reject the constraints that Defendants improperly seek to inject into the claim language, and should adopt Parus's proposed clarification of the plain claim language.

### a.   Parus's proposal reflects the proper scope and context of the claim term.

Turning first to the claims, the plain language of the claims supports Parus's position. Specifically, the word "independent" modifies the word "speaker." The regular meaning of these words indicates that the system does not depend on a specific user in order to be used. By contrast, the usability of a speaker <u>dependent</u> system requires that the system is effectively tied to a particular user after extensive training. Further, the dependent claims associated with Claim 1 of the '431 Patent also impart meaning to the disputed term. Claim 1 of the '431 patent requires "at least one speaker-independent speech recognition device." Ex. 1 at 19:64-64. Claims 5 and 6, each of which depends from claim 1, claim speaker-independent speech recognition devices that are, respectively, "configured to analyze phonemes to recognize … speech commands" and

"configured to recognize naturally spoken speech commands." Ex. 1 at 20:51-53 (claim 5) and 20:54-56 (claim 6). Analogous claim language also appears in claims 1, 5, and 6 of the '084 patent. Ex. 2 at 24:11-12 (speaker-independent speech recognition device element of claim 1), 25:3-5 (claim 5), and 25:6-8 (claim 6).

Nothing in the plain language of the claim expressly or impliedly addresses whether training is or is not required in order to use the claimed system—but the specification provides important guidance in this regard. For example, it expressly teaches one skilled in the art that certain embodiments of the invention are directed to a system that allows <u>users</u>, plural, to "retrieve information by using conversational voice commands." Ex. 1 at 1:20-23; *see also id.* at 3:16-19. The specification describes the attributes of a "speaker-independent speech recognition device" in one of the embodiments, and is unequivocal that such a device can

> recognize[] naturally spoken voice commands <u>and is speaker independent; it **does not *have* to be trained**</u> to recognize the voice patterns of each individual user.

*Id.* at 4:38-43 (emphases added).

Further, the specification teaches that, as to at least one embodiment, speaker-independence means that the "speech recognition systems [of one embodiment] use phonemes to recognize spoken words and <u>*not* predefined voice patterns</u>." *Id.* at 4:43-45 (emphases added). Reading these disclosures in the specification, one skilled in the art at the time of the invention would understand that the claimed speaker-independent speech recognition device need not be trained to recognize the voice patterns of an individual user. *See* Ex. 1 at 1:20-23, 3:16-19, 4:38-45, 5:55-56; *see also* Occhiogrosso Decl. at ¶ 65. This is what Parus's proposal properly and accurately captures.

The claims require a flexible and broad "speaker-independent speech recognition device," not the narrowly defined device advocated by Defendants. Read in light of claims 5 and 6, the

speaker-independent speech recognition device of claim 1 of each patent includes at least such devices (1) that can analyze phonemes[3] to recognize speech commands and (2) that can recognize naturally spoken speech commands. *See Phillips*, 415 F.3d at 1315 ("[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."); *see also Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1335 (Fed. Cir. 2007) (independent claim embraces more than its narrower dependent claim). With this, it follows that one skilled in the art at the time of the invention would understand at least that the "speech recognition" limitation of claim 1 of each of the Asserted Patents may be satisfied by speech recognition devices that recognize speech commands through two or more approaches. The claims therefore are not limited to the expressly taught ways of accomplishing the "speech recognition" functionality of the claimed inventions. Similarly, this is also a strong clue that the claims likewise do not contemplate a narrow understanding of the term "speaker-independent."

### b. Defendants' artificially limiting and differing proposals are contradicted by the intrinsic and extrinsic evidence.

Importantly, contrary to Defendants' artificially limited proposals that find no support in the teachings of the shared specification, one skilled in the art would <u>not</u> understand the claimed speaker-independent speech recognition device to exclude any and all adaptation or other tailoring to an individual user or users. *See* Occhiogrosso Decl. at ¶¶ 66-67. It is true that those skilled in the art understood that speaker-<u>dependent</u> systems were designed for optimal use by one individual, an individual to which that system needed to be trained (often extensively). But the inverse of that is not true, as Defendants incorrectly urge. It is <u>not</u> the case that speaker-<u>in</u>dependent

---

[3] A "phoneme" is the term for a unit of sound in a language that cannot be analyzed into smaller linear units and that can distinguish one word from another. *See* Occhiogrosso Decl. at ¶ 38 and Ex. B thereto.

systems must not and cannot ever be adapted or modified to more accurately function for particular users.

To start, the specification discusses database 100 (Figure 1), which contains, among other things, the "web site record 200" shown in Figure 2. *See generally* Ex. 1 at Figs. 1 and 2, 4:64-5:59. It expressly teaches that "database 100 may contain <u>customer profile information</u> … ." *Id.* at 5:55-56 (emphasis added). Thus, one exemplary embodiment clearly discloses a system storing and utilizing <u>user-specific</u> information. From this, and in connection with the specification's broad explanation of "speaker-independent," one of ordinary skill in the art would understand that such "customer profile information" could include data retained, stored, and utilized by the system to, among other things, improve accuracy in voice recognition. *See* Occhiogrosso Decl. at ¶ 66. Nowhere does the specification exclude any such features, either expressly or implicitly, from the scope of the "speaker-independent speech recognition device" limitation of claim 1. *See id.* at ¶¶ 66-67; *see generally* Ex. 1. And there is nothing coming close to a clear disavowal of claim scope in this regard in the file histories. Yet that is precisely what Defendants' narrow proposals seek to do without support, each attempting to inject negative limitations into the claim. Apple and Amazon seek to exclude all systems that adapt in any way to an individual speaker. For their part, Google, LG, and Samsung (together, the "Android Defendants") seek to exclude all systems that use any "predefined voice patterns." To adopt either of these proposals would ignore the express teachings of the patents.

Neither Parus nor its expert, Mr. Occhiogrosso, believe anything further is necessary in order to demonstrate that Parus's proposed clarification of the ordinary meaning of the disputed term is the proper one, and that Defendants' competing proposals are overly limiting. *See* Occhiogrosso Decl. at ¶ 67. Nonetheless, to the extent it may be helpful, extrinsic evidence also

PLAINTIFF PARUS HOLDINGS INC.'S OPENING BRIEF REGARDING CLAIM CONSTRUCTION

supports Parus's position. For example, academic writing prior to and around the time of invention supports the notion that practitioners in the voice recognition space understood that speaker-<u>dependent</u> systems were optimized for accurate use by only one individual and needed to be extensively trained with large amounts of speaker-specific data. This rendered such systems unsuitable for many applications. This was well known and understood by those skilled in the art at the time of the invention. *See, e.g.,* Occhiogrosso Decl. at ¶ 48 and Ex. D thereto (Leggetter and Woodland, *Maximum likelihood linear regression for speaker adaptation*, Computer Speech and Language 9, at 171 (1995)) ("Since large amounts of speaker-specific data is required for [speaker-dependent] systems they are not suitable for many applications.").

Other voice recognition systems at the time, known as speaker-<u>in</u>dependent, had error rates that were higher than speaker-dependent systems. But their primary benefit was that they did not <u>require</u> any training in order to function in the first instance, and could be used by any speaker[4]—hence the moniker "speaker independent." *See id.* (noting that word error rates for speaker-independent systems were around two to three times higher than speaker dependent alternatives); *id.* at ¶ 47 and Ex. C thereto (Huang, *A Study on Speaker-Adaptive Speech Recognition*, HLT '91: Proceedings of the workshop on Speech and Natural Language (February 1991)) (same).

In view of these higher error rates in speaker independent systems, those in the art recognized the benefit of enhancing such systems by adding elements of learning or adaptation to "tune" it to individual users. *See, e.g.,* Occhiogrosso Decl. at ¶ 48 and Ex. D thereto (Leggetter and Woodland, *Maximum likelihood linear regression for speaker adaptation*, Computer Speech and Language 9, at 171 (1995)) (describing the benefit of adding "a small amount of the new

---

[4] Generally, a speaker-independent system designed to function in response to English speech can be used out-of-the-box by any English-speaker, but not a user speaking a different language.

PLAINTIFF PARUS HOLDINGS INC.'S OPENING BRIEF REGARDING CLAIM CONSTRUCTION

speaker's speech (adaptation data) to 'tune' the [speaker-independent] models to the new speaker"
in order to increase accuracy and reduce the error rate). For example, one researcher observed that
speaker-independent systems are "definitely desirable in many applications where speaker-
specific data do not exist," but if speaker-specific data are available, that speaker-independent
system "could be adapted to a specific speaker to further reduce the error rate." *Id.* at ¶ 47 and Ex.
C thereto (Huang, *A Study on Speaker-Adaptive Speech Recognition*, HLT '91: Proceedings of the
workshop on Speech and Natural Language (February 1991)). This same author posited that "[a]
logical compromise for a practical system is to start with a speaker-independent system, and then
adapt the system to each individual user." *Id.*

One skilled in the art would know that one way of improving accuracy in a speaker-
independent system starts with a strictly speaker-independent system out of the box, but uses
"limited adaptation data" to improve it. *Id.* The crux of this Carnegie Mellon study was to do just
that. Others in the field also recognized that speaker-independent systems could utilize information
obtained from users to enhance accuracy. *See, e.g.*, *Id.* at ¶ 47 and Ex. E thereto (Cox et al., *Speech
and Language Processing for Next-Millennium Communications Services*, Proceedings of the
IEEE, vol. 88, no. 8 (August 2000)).

That is the type of speaker independent system of the Asserted Patents, one that "<u>does not
have to be trained</u> to recognize the voice patterns of each individual user." Ex. 1 at 4:38-43.
(emphasis added). The Court should adopt Parus's proposal on this claim term.


//

2.      "recognition grammar" ('431 claim 1; '084 claim 1)

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "recognition grammar" | What a user can say in natural language that will be recognized by the speech recognition device | **Google, LG, Samsung:** "a predefined subset of words and predefined rules specifying the sequences in which a user can put those words so that they can be recognized by the speech recognition engine" **Amazon, Apple:** "predefined set of words and phrases a user can say that will be recognized by the speech recognition engine" |

Parus's proposed language for the disputed term "recognition grammar" is the only proposal before the Court that harmonizes the plain and ordinary meaning of the term with its proper scope in the context of the teachings of the Asserted Patents. For example, the specification expressly teaches that Parus's proposal is correct: that the "natural speech recognition grammars" are "<u>what a user can say that will be recognized by the speech recognition engine.</u>" Ex. 1, at 6:21-24 (emphasis added). This comports with the understanding of one skilled in the art at the time of the invention, as Parus's expert opines. *See, e.g.*, Occhiogrosso Decl. at ¶ 68. The same cannot be said of the overly narrow and competing proposals offered by Defendants. Nothing in the claim, the specification, or the file histories mandates that the claimed recognition grammar be a "predefined" and static set of words, phrases, and/or rules. Nothing in the intrinsic record states, let alone suggests, that the recognition grammar cannot or must not be dynamic. Nor is there any justifiable temporal limitation as Defendants' "predefined" constructions attempt to inject into the claim. *Id.* at ¶¶ 69-70. Here again, Defendants offer two competing proposals, each of which is too constrained in view of the ordinary understanding of the claim, the specification, and the knowledge of one skilled in the art. The Court should adopt Parus's proposal.

a.      <u>Parus's proposal comports with the intrinsic record and provides welcome clarity to the term of art.</u>

The shared specification is clear that the "recognition grammars" contemplated by the preferred embodiment are "what a user can say that will be recognized by the speech recognition

engine." Ex. 1, at 6:21-24. As noted, this is precisely Parus's proposal. In the preferred embodiment, the speech recognition engine 300, depicted in Figure 3, uses the recognition grammar, developed by Webley Systems—a division of the Plaintiff in this case—to perform speech recognition. *Id.* at 6:4-24. The speech recognition engine of the preferred embodiment "is used to recognize natural, conversational voice commands spoken by the user and converts them into data messages <u>based on the available recognition grammar</u>." *Id.* at 4:50-53 (emphasis added). Moreover, this "speech recognition function is performed by the speech recognition engine 300 that converts voice commands received from the user's voice enabled device 112 … into data messages." *Id.* at 6:5-8. The specification further teaches that "[t]he media server 106 uses the speech recognition engine 300 to interpret the speech commands received from the user." Ex. 1 at 16:3-5; *see also* Ex. 1 at 18:24-40 ("Speech commands received from the voice enabled device of the user 504 are converted into data messages via a speech recognition engine[.]").

As taught by the shared specification, therefore, the speech recognition function of the invention uses the recognition grammar to recognize the user's speech commands. In other words, the available recognition grammar constitutes what the user can say to the system that it will recognize. This is consistent with how one skilled in the art at the time of the invention would readily understand this term. *See* Occhiogrosso Decl. at ¶ 68. And this aligns exactly with Parus's proposed clarification of the disputed term: "what a user can say that will be recognized by the speech recognition engine."

          **b.**    <u>**Absent any justification in the intrinsic record, Defendants' proposals improperly seek to limit the scope of the claim term.**</u>

On the other hand, Defendants' differing proposals for the meaning of "recognition grammar" are overly limiting, and attempt to restrict the claimed recognition grammar to a collection of "predefined" words, phrases, and/or rules. The language proposed by Amazon and

Apple is less offensive to the appropriate meaning of the claim term than the Android Defendants' proposal, but the limitation "predefined set of words and phrases" nonetheless makes it artificially constrained. There is no discernible support in the intrinsic record for such a limitation, and certainly no lexicography or disclaimer is present in the record. There is thus no basis to import such limitations into the term "recognition grammar." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1369 (Fed. Cir. 2012). The Android Defendants' position finds even less support in the intrinsic record. In particular, their requirement that the recognition grammar be a "predefined subset of words and predefined rules" that must specify "the sequences" in which a user can put such words so that they can be recognized by the system is nothing short of conjured. It has no concrete support in the intrinsic record.

The specification does provide an exemplary excerpt, in Table 2, of "source code listing of the recognition grammars used by the speech recognition engine of the preferred embodiment for obtaining weather information":

TABLE 2

```
?WHAT__IS ?the weather ?[info information report conditions]
          ? ( (?like in )
          [
UScities.n
          {<param1 $n.zip> <param2   $n.city> <param3
$n.state>}
          ( (area code) AREA_CODE:n ) {<param1 $n>}
          ( AREA_CODE:n (area code) ) {<param1 $n>}
          ( (zip ?code)   ZIP_CODE:n  ) {<param1 $n>}
          ( ZIP_CODE:n (zip ?code) )   {<param1 $n>}
          ]
          )
                     ) {<menu 194>}
```

Ex. 1 at 6:25-43. This source code excerpt includes words, phrases, and parameters that the patentee included in the specification to provide additional teaching and context for an example used in the preferred embodiment. But to the extent Defendants seek to rely on this exemplary disclosure to support the limitations in their proposed constructions, reading in any such limitations would violate bedrock Federal Circuit claim construction rules. *Rothschild Connected Devices*

*Innovations, LLC v. Coca-Cola Co.*, No. 2019-1825, 2020 U.S. App. LEXIS 15877, at *9 (Fed. Cir. May 18, 2020) (citing *Phillips*, 415 F.3d at 1323) ("Although claim terms are interpreted in the context of the entire patent, it is improper to import limitations from the specification into the claims.").[5] The Court should reject any invitation to do so.

Moreover, Parus's expert notes that he is unable to discern anything in the intrinsic record, or based on his understanding of the term as one skilled in the art, that the claim term "recognition grammar" must include Defendants' predefined words, phrases, and/or rules. *See* Occhiogrosso Decl. at ¶¶ 70. In Mr. Occhiogrosso's opinion, the inherent vagueness in this aspect of Defendants' proposed constructions only compounds the problem with their proposals. *See id.* at ¶ 70.

For at least these reasons, the Court should adopt Parus's proposal for understanding the term of art "recognition grammar" as it is described and used in the patents: "what a user can say in natural language that will be recognized by the speech recognition device."

### C.   None of the Terms Defendants Propose for Construction Require Anything Other Than Their Plain and Ordinary Meaning

Defendants propose three terms for specific construction, contending that each needs a particularized definition beyond their plain and ordinary meanings. No such specific definitions are necessary or justified, as Defendants cannot demonstrate that there is any basis for departing from the usual approach to claim construction of giving terms their ordinary meaning. First, there is nothing in the teaching of the shared specification to demonstrate the patentee acted as his own

---

[5] *See also Innovative Memory Sys. v. Micron Tech., Inc.*, 784 F. Appx 771, 776 (Fed. Cir. 2019) (quoting *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007) (citation omitted)) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *Trading Techs. Int'l, Inc.*, 595 F.3d at 1352 ("When consulting the specification to clarify the meaning of claim terms, courts must not import limitations into the claims from the specification.") (emphasis added); *Liebel-Flarsheim Co.*, 358 F.3d at 904 ("[I]t is improper to read a limitation from the specification into the claims.").

lexicographer to define these terms in a manner different from their plain and ordinary meaning. Second, Defendants will be unable to point to anything in the file histories that is the type of clear and unequivocal waiver of claim scope that might justify departing from the plain and ordinary meaning of these terms. This is because abandoning the plain and ordinary meaning of claim terms should only be done where the patentee has clearly defined such terms in the specification, or abandoned claim scope during prosecution. *Toshiba*, 681 F.3d at 1369 ("Absent disclaimer or lexicography, the plain meaning of the claim controls."). There is no such clear definitional teaching in the specification, just as there is no such disclaimer. Even worse, each of Defendants' proposed constructions seek to inject limitations into the claim language where there is no basis to do so. This Court should reject Defendants' unsupported attempts to artificially constrain claim terms where no specific construction is warranted. These terms are not difficult for a skilled artisan to understand, and such an artisan would need no further guidance as to their meaning.

      **1.**      **"web site" ('431 claims 1, 7, 9, 10, 13, 14; '084 claims 1, 7, 10, 14)**

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "web site" | Plain and ordinary meaning | All Defendants: "collection of linked and related web pages for browsing by a user with a web browser" |

This Court should give the term "web site" its plain and ordinary meaning as understood by a person of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1313-14. There is no need, or basis, to depart from the usual approach, especially with such a basic and readily understood term. Defendants' proposed construction, "collection of linked and related web pages for browsing by a user with a web browser," is overly narrow and unsupported by the intrinsic evidence. There is nothing in the specification or prosecution history that can or should require limiting the term "web site" to <u>only</u> a "collection of linked and related <u>web pages</u> for

browsing by a user with a web browser." *See Toshiba*, 681 F.3d at 1369 ("Absent disclaimer or lexicography, the plain meaning of the claim controls.").

A skilled artisan would understand that the plain and ordinary meaning of "web site" includes more than Defendants' overly constrained construction. That ordinary meaning includes, for example, single-page web sites, web sites with dynamically updated information (e.g., www.weather.com providing real time updates of weather in a particular area), and web-based content readable and accessible by a web server, such as additional information resident on the web site that can be downloaded (like a PDF of a white paper), or a web-accessible database in a markup language utilized by the web site. *See, e.g.*, Ex. 1, '431 Patent at 17:29-35 (noting that "the web sites accessible by the voice browser of the preferred embodiment may use any type of mark-up language, including Extensible Markup Language (XML), Wireless Markup Language (WML), Handheld Device Markup Language (HDML), Hyper Text Markup Language (HTML), or any variation of these languages"). As an initial matter, there is no reason to exclude web sites having a single web page. Nothing in the intrinsic or extrinsic record provides support for such a restriction. Nor is there any support for an implicit limitation to static web sites. In fact, the opposite is true: the specification expressly teaches that one of the benefits of the invention is that the system "dynamically adapt[s] to changes in the rapidly evolving web sites that exist on the Internet." *Id*. at 17:26-28 (emphasis added).

As to accessibility, the specification contemplates a web browsing server 102 that automatically retrieves web-accessible information from the web-enabled sources in response to voice commands from the system's user. *See, e.g.*, Ex. 1, '431 Patent at FIG 1; *id*. at FIG 4 (describing aspects of "web browsing server" 102 as including "content extracting agent" 400, "content fetcher" 402, "polling and ranking agent" 404 and "content descriptor files" 406); *id*. at

4:54-57 ("In the first preferred embodiment, the network interface system is referred to as a web browsing server."). The ability to extract information from the Internet using the described type of content extracting agent on a server cannot be limited to content that is only viewable by a web-browsing individual via web browsers such as Internet Explorer or Chrome. *See* Occhiogrosso Decl. at ¶¶ 49-51, 71-72. But that is exactly how Defendants attempt to restrict the full scope of the claim with their narrow proposal with no basis in the intrinsic record to do so. Therefore, the term "web site" should be given the full scope of its plain and ordinary meaning as Parus urges.

> **2.** **"select the corresponding recognition grammar upon receiving [said/the] speech command" ('431 claim 1; '084 claim 1)**

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| select the corresponding recognition grammar upon receiving [said/the] speech command | Plain and ordinary meaning | **Amazon, Google, LG, Samsung:** "upon receiving [said/the] speech command, select the recognition grammar for the corresponding category of information"<br><br>**Apple:** No construction provided |

Similarly, the Court should give the term "select the corresponding recognition grammar upon receiving [said/the] speech command" its plain and ordinary meaning. *Phillips*, 415 F.3d at 1313-14; *Toshiba*, 681 F.3d at 1369 ("Absent disclaimer or lexicography, the plain meaning of the claim controls."). In keeping with a theme, Defendants' proposed construction, "upon receiving [said/the] speech command, select the recognition grammar for the corresponding category of information," adds a limitation that is overly narrow and unsupported by the intrinsic evidence— and simply moves words around.

As discussed above regarding Defendants' proposed constructions of "recognition grammar," nothing in the intrinsic record limits the scope of the term "recognition grammar" to a static or pre-defined subset of words, phrases, and/or rules. *See, supra* Section V.B.2. So too here, where Defendants' proposed construction improperly limits the scope of this term to a

corresponding "category of information"—in effect requiring a one-to-one relationship between individual recognition grammars and categories of information. There is nothing in the intrinsic record that supports such a limitation, or that suggests that recognition grammars cannot be dynamic. *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1333 (Fed. Cir. 2013) (citing *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1342 (Fed. Cir. 2013)) ("It is axiomatic that [the Court] will not narrow a claim term beyond its plain and ordinary meaning unless there is support for the limitation in the words of the claim, the specification, or the prosecution history.").

Other than this grafted-on limitation, Defendants simply move words of the claim term around in their construction. This approach does nothing to explain the meaning of the terms and should be rejected, as other courts have repeatedly done. For example, in *Rotatable Techs. LLC v. Nokia*, 2013 U.S. Dist. LEXIS 108376, at *32-33 (E.D. Tex. Aug. 1, 2013), the court assessed the claim term "determining a rotation point" and rejected defendants' proposed construction of "Rotation point is determined by the user" because it "simply restates the words of the claim in a rearranged order and then appends an extraneous limitation that is without support in the claims." That is exactly what Defendants improperly attempt to do here, and the Court should reject it.[6]

For at least these reasons, the term "select the corresponding recognition grammar upon receiving [said/the] speech command" should be given its plain and ordinary meaning as understood by one skilled in the art at the time of invention. *See* Occhiogrosso Decl. at ¶ 73.

---

[6] *See Lyons v. Nike*, No. 9-cv-1183, 2010 WL 5812956, at *9-11 (D. Ore. Sept. 28, 2010), *adopted by* 2011 WL 597050 (D. Ore. Feb. 11, 2011) (rejecting construction that "merely seeks to reconfigure claim language in way that is not meaningful"); *Serverside Grp. v. Tactical 8 Techs.*, 927 F. Supp. 2d 623, 629, 659 (N.D. Iowa 2013) (rejecting attempt to construe "'secure unique identifier' as 'unique identifier which is secure'" because "this proposed construction clears up nothing.").

3.      **"access at least one of [said/the] plurality of web sites identified by [said/the] instruction set to obtain [said/the] information to be retrieved" ('431 claim 1; '084 claim 1)**

| Claim Term | Plaintiff | Defendants |
|---|---|---|
| "access at least one of [said/the] plurality of web sites identified by [said/the] instruction set to obtain [said/the] information to be retrieved" | Plain and ordinary meaning | **Google, LG, Samsung:** "search at least one of [said/the] plurality of web sites identified by [said/the] instruction set to obtain [said/the] information to be retrieved, not including retrieving a specific resource from a specific web site"<br><br>**Amazon and Apple:** No construction provided |

Here too, the Court should give the term "access at least one of [said/the] plurality of web sites identified by [said/the] instruction set to obtain [said/the] information to be retrieved" its plain and ordinary meaning. *Phillips*, 415 F.3d at 1313-14; *Toshiba*, 681 F.3d at 1369. Tellingly, Defendants once again diverge on the meaning of this term. Where only the Android Defendants propose a construction for this term, by their silence Amazon and Apple appear to agree with Parus that the plain and ordinary meaning should apply. The Android Defendants' proposed construction appears to lack any tether to the intrinsic evidence, which provides support neither for changing the word "access" to "search," nor for reading in Defendants' negative limitation. Doing so would impermissibly restrict the scope of the claim term and inject limitations into the term found nowhere in the claims, specification, or prosecution history.

As an initial matter, the plain and ordinary meaning of the term "access" is not "search," and one of ordinary skill in the art would not interpret "access" as "search." Occhiogrosso Decl. at ¶ 74. The specification does not re-define access in that way and the prosecution history provides no disclaimer to support such a reading. *Toshiba*, 681 F.3d at 1369 ("Absent disclaimer or lexicography, the plain meaning of the claim controls."). Further, none of the extrinsic evidence provided by Defendants re-define "access" as "search."

PLAINTIFF PARUS HOLDINGS INC.'S OPENING BRIEF REGARDING CLAIM CONSTRUCTION

Moreover, the negative limitation of the Android Defendants' proposed construction, "not including retrieving a specific source from a specific website," is particularly troubling, as it appears to be crafted specifically as a non-infringement argument rather than a genuine attempt to clarify a claim term's meaning. This is impermissible on its face and unsupported by the intrinsic evidence. *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009) ("Claims are properly construed without the objective of capturing or excluding the accused device."). Further, there is no evidence that the patentee sought to specially define or disclaim the scope of this term. *See Toshiba*, 681 F.3d at 1369. As such, the Court should give the term its plain and ordinary meaning.

### D.   None of the Disputed Terms Are Indefinite or Means-Plus-Function Under 35 U.S.C. § 112, ¶ 6

The Android Defendants further contend that one claim term is indefinite. And Amazon conspicuously stands alone in arguing that three additional claim terms are governed by 35 U.S.C. § 112, ¶ 6, and that one of these terms is indefinite. They are all wrong. To start, by its silence, Apple appears to agree with Parus that none of these terms are either indefinite or means-plus-function. And not even the Android Defendants go so far as to join Amazon's position that three terms are means-plus-function. This is likely because none of the claim terms use the word "means." Because the Federal Circuit has "long recognized the importance of the presence or absence of the word 'means,'" there is a presumption that § 112 does <u>not</u> apply. *Williamson*, 792 F.3d at 1348 (quoting *Watts v. XL Sys.*, 232 F.3d 877, 880 (Fed. Cir. 2000) (if a claim term lacks the word "means," the presumption can only be overcome "if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure[.]'"). Amazon cannot come close to carrying its burden of rebutting this presumption, or demonstrating that anyone skilled in the art "would be <u>unable</u> to recognize structure in the specification and associate it with the corresponding

function in the claim." *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) (emphasis added).

Nor will the Android Defendants and Amazon be able to show, clearly and convincingly, that the two claim terms they contend are indefinite fail to inform those skilled in the art with reasonable certainty what the objective boundaries of the invention are. *United Access Techs.*, 757 Fed. Appx. at 969 (indefiniteness must be proved by clear and convincing evidence). This is because, when viewed in light of the specification and prosecution history, the claims inform those skilled in the art about the scope of the invention with reasonable certainty, including by providing such practitioners with objective boundaries. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014) (definiteness requirement is satisfied when the patent claims "inform those skilled in the art about the scope of the invention with <u>reasonable certainty</u>") (emphasis added). Of course, the "reasonable certainty" standard does not require "absolute or mathematical precision." *Interval Licensing*, 766 F.3d at 1370. It is enough that the claims, when read in light of the patent specification and prosecution history, "<u>provide objective boundaries</u> for those of skill in the art." *Id.* at 1371 (emphasis added).

As the Android Defendants and Amazon have not set forth any argument or support for their contentions regarding these claim terms, Parus reserves a more detailed discussion for its responsive briefing after Defendants provide some support for their positions, if any exists.

## VI.   CONCLUSION

For at least the reasons set forth above, Parus respectfully urges the Court to adopt its positions regarding each of the claim terms in dispute.

Dated: June 5, 2020

Respectfully submitted,

/s/ *Andrew H. DeVoogd*
T. John Ward, Jr.
  Texas State Bar No. 00794818
  E-mail: jw@wsfirm.com
Charles Everingham IV
  Texas State Bar No. 00787447
  E-mail: ce@wsfirm.com
Andrea L. Fair
  Texas State Bar No. 24078488
  E-mail: andrea@wsfirm.com
Claire Abernathy Henry
  Texas State Bar No. 24053063
  E-mail: claire@wsfirm.com
WARD, SMITH & HILL, PLLC
PO Box 1231
Longview, Texas 75606-1231
Tel: 903-757-6400
Fax: 903-757-2323

Michael T. Renaud
  Massachusetts BBO No. 629783
  E-mail: MTRenaud@mintz.com
Michael J. McNamara
  Massachusetts BBO No. 665885
  E-mail: MMcNamara@mintz.com
Andrew H. DeVoogd
  Massachusetts BBO No. 670203
  E-mail: AHDeVoogd@mintz.com
Courtney P. Herndon
  Massachusetts BBO No. 693418
  E-Mail: CHerndon@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY
  AND POPEO PC
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241
www.mintz.com

*Counsel for Plaintiff Parus Holdings Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document

has been served on June 5, 2020 by email to all counsel of record.

/s/ <i>Andrew H. DeVoogd</i>
Andrew H. DeVoogd

PLAINTIFF PARUS HOLDINGS INC.'S OPENING BRIEF REGARDING CLAIM CONSTRUCTION
99105410